Good morning, Your Honors. On behalf of the people, Assistant State's Attorney John Svigel. Good morning, Counselor. Whenever you're ready, Mr. Ackerman. David Jenk maintains he's not guilty, that the court erred in finding him guilty, and I will get right into the argument. We maintain that we can challenge the sufficiency of the evidence for the first time on appeal. We maintain that's settled law in Illinois, and that if you look at the facts in this case through an objective lens, if you will, the primary evidence has to do with the propensity evidence, not the evidence of the events of June 9, 2013. Early in the morning on June 9, 2013, after the complainant and David had been imbibing with others for several hours, at least two and probably three different places, at about five in the morning, she maintained in her testimony that they got into an altercation, that that happened with some frequency, that there was pushing and shoving, and the next thing she knew, there was a hand coming toward her face. Was that hand identified to be the hand of the defendant? No, not in the record. It's called a hand, and that is how it's described. Was she ever questioned during direct or cross as to who it was that struck her? I suspect that trial counsel for the defendant, having heard a hand, stayed away from it because it could only have been corrected on cross. Who else was present during the incident? The two of them. This was at five in the morning. There was a question of stairs, whether somebody tripped because there was a stairway leading into her apartment. But isn't that a reasonable inference from the evidence that there were only two people there and a hand came toward her face, that it was the other person's hand? Not if you're falling. The dynamics of falling, particularly if you're inebriated, which there is no question both were highly intoxicated. Your client was convicted solely upon her evidence. Is that correct? That is correct, save for approximately a third of the bench trial concerned what we call propensity evidence, which presumptively was admitted pursuant to 7.4 of 115 of ILCS. So where do you get this percentage argument? I mean, let's say there was a relationship that had gone on for years and the person comes in and shoots the woman. It takes, you know, five seconds, opens the door and shoots her. And propensity evidence will come in if the court determines it's appropriate. So let's say 75 percent of the trial was propensity evidence and 25 was what happened at the incident. What difference does that make? What are you basing this percentage argument on? It renders a trial fundamentally unfair because you're undermining presumption of innocence. And if you're undermining presumption of innocence, I set out in my required brief at least two and probably three federal cases that talk about exactly other evidence undermining the presumption of innocence. Well, let's talk about people versus dabs, counsel, as far as the due process argument and the equal protection argument. Isn't it clear on its face, what does DAB hold as far as due process under Illinois law? The DAB holding, first of all, withdrew the equal protection because trial... I understand that. What does it hold relative to due process? The court said, Justice Garmon, said essentially that, look, if you're challenging a statute under due process, you have to determine, because there's no classification involved, that it's fundamentally unfair, meaning a suspect quest. Whether I agree or not, the law in Illinois is that the defendant who is charged and convicted of even a domestic misdemeanor battery, the uncharged offenses, if otherwise relevant, according to the statute, come in. And I might add that the Illinois Rules of Evidence, only since August 2015, embraced 7.4. But again, that's the law of the land here in Illinois. Is it not relative to due process argument on that specific statute? I haven't, you haven't permitted me to finish. Well, answer my question. I'm trying to. Well, yes or no? No. Oh. No, because in DADS, defense counsel proffered no federal due process cases where propensity evidence was discussed as undermining the fundamental due process right to a fair trial. Didn't they ask for a cert in the U.S. Supreme Court on that case? In DADS? Yeah. I have no clue. Well, they did, and it was denied. That only means that four justices didn't think it was worthy of accepting. I understand, but as a defense counsel, what are we to do with the DADS case? Ignore it and tell the Supreme Court they are wrong in that ruling? You, I'm trying to distinguish it because in DADS, if I recall correctly, there was an antecedent conviction. Here there is no antecedent conviction. It is simply uncharged propensity conduct. Is that, counsel, is that the distinguishing factor? Is that the distinguishing factor that you're referring to? In this particular instance, yes, and the second part of this was in DADS, if I recall correctly, and I think I do, that in DADS, his ex-wife, who was abused in 20, not abused, battered in 2003, immediately went to the police and had him arrested. And the woman who he's charged with in 2008, Amy, his fiancee, couldn't go that night, so she went the next day. Here, the complainant waited two months to seek the intervention of the police. Counsel, as far as propensity evidence, doesn't it say that the court may admit evidence that the defendant committed other acts? It doesn't say the defendant was convicted of other crimes? Correct. Right. So isn't that what we have here? He committed other acts. You're arguing that the court only can let in propensity if there's a conviction. I'm arguing that the facts of this case are divorced from DADS to the point where the court below should not have permitted one-third of the trial to be devoted to propensity evidence in order to shore up, do nothing more than act as a proxy for evidence for the crime of charge. And that is, on this particular early morning, a hand came toward her face. Was the defendant trying to break her fall? Was it her hand? We don't know. All we know is that she said, a hand. That is an exceedingly weak reason to convict somebody of any crime, let alone a domestic battery, where these have consequences beyond anything to do with what I will mention here, even if it's a misdemeanor. Wasn't there evidence that the defendant told her to make up a story? That's what she testified to. Right. And was there evidence that she said, the defendant said to her, you deserved it? That's what she testified to. Okay. Thank you. Yes. The last question or the last issue is, did the trial judge use what I'll call private knowledge while adjudicating guilt when she said she sees this all the time or words to that effect? Is that a fair comment to make while adjudicating guilt? Because what happened is, this complainant changed her story three different times. She told the police none of this happened. It wasn't him. And as Justice O'Connor points out, this was in theory a conspiracy between the two of them. She didn't come clean about it until two months later when she told her mother and then they went to the police. Well, she told all sorts of different stories for two months. She certainly did. And then on August 6th reported allegedly what the true story was. And during the trial? The court made a comment that her changing stories made her last story more credible than all the others. The court, please. Do you have any argument on that point? It flies in the face of common sense. Because if somebody lies once, lies twice, lies three times, and now the fourth time tells a different version, who is it that, who amongst us, is capable of believing story one, story two, story three, or story four? We maintain in this particular case, these particular facts, when you combine them, no witnesses, drunken people, two months delay in reporting anything. Counsel, can we? I'm sorry, go ahead. She testified as to a reason for the delay and the trial court believed that testimony. Isn't that correct? That doesn't mean it's conclusive on this court. Well, that's true. This court, if I recall. We would like to think nothing is conclusive on this court. If I recall correctly, you wrote a dissent some time ago about incredible testimony, incredulous I think you called it. It's amazing how these dissents come back to bite you sometimes. Yes, I did write that. Counsel, can I ask you exactly what was the statement the court made that showed she used some personal knowledge outside of the record? That which justice. No, you tell me. That she sees this all the time. She sees this all the time, that's what you're saying. Let me finish, please. And the fact that she changed her version of the events multiple times enhanced her credibility to this court, to this judge. But is that a comment on the evidence? The first part of it was. I'm sorry, the second part was. The first part was not. So that's a comment on the evidence. That's not something outside the facts of the case. The first part was I see this all the time. Okay. Isn't that the court bringing to the courtroom the experience that they have in hearing these kinds of cases? Would that be interpreted that way? It certainly could have been. Let me ask you this. The case used Wallenberg as a basis for this case. This is a case where the court said something about I know that neighborhood, I know he could have stopped at a gas station anywhere. I mean, that's truly something the court brought outside the evidence, right? Yes. So does Wallenberg really support your argument here? It was a bench trial, and the court, the Illinois Supreme Court reversed it because of the general proposition that private knowledge, and the same thing in people versus data, private investigation of private knowledge cannot be challenged that way because there is no cross-examination, there's no opportunity to be heard, there's no notice to the accused. I understand that. So you cannot combat it. But the statement made by the court in Wallenberg is greatly different than what the statement was made by the court here. It is certainly different. Okay. I believe that's a matter of degree. If the court agrees, nothing else. Thank you. Thank you, Mr. Atkinson. May it please this honorable court, my name is John Svigel. I'm on behalf of the people of Illinois. Good morning. There's ample evidence that trial. Could you repeat what you said last time? Yeah, sure. Justice. There's ample evidence of defendant's guilt at trial. There was not just a hand here that was coming towards ACR's face, but rather there was mutual pushing and shoving, which predated the hand coming towards her face. There's uncontradicted testimony of ACR at trial as to what occurred. There was corroboration of injuries. It's not just one account versus the other. There was medical testimony and there were photographs. Also, there were admissions by the defendant. There was the admission by the defendant that there were the two admissions by the defendant that Justice Conner has mentioned earlier, the changing stories, the prompting of the stories, the statement you deserved what you got. Also, in the memo line of the check which she wrote to ACR for the medical bills, there was the statement, quote, settlement of medical bills, end quote. This did come down to a measure of credibility, credibility determination, which the court accorded to ACR. ACR was thoroughly cross-examined. She was thoroughly tested. It was her account at trial was corroborated by external evidence, and this court should pay the heed to trial court's determination of credibility that this court has traditionally accorded such determinations. As to the percentage argument the defendant asserts, the numbers, to begin with, are completely made up. There is no basis in the record for these numbers. The 204-page trial transcript he refers to is, in fact, only 176 pages. So what he is specifically referring to as to constituting other crimes evidence is beyond this court, and it was not addressed, I'm sorry, beyond the people, and it was not addressed in defendant's reply brief. This court initially need not reach the constitutional issue presented because plenty of the common law grounds on which this other crimes material was offered comes in. Under common law, these other crimes evidence, this other crimes evidence is appropriate of motive, intent, and continued hostility as recognized in herd and as recognized in ilgen. It goes to lack of mistake or accident, especially when we have a situation where there is one complainant and one defendant in a room, and the defendant knocked the complainant unconscious, hit her with such force that she was knocked unconscious, and does not know how she sustained the injuries, like the gash above her head that required five stitches, or her broken left arm. Also, it goes to identity. So even on common law basis, there are plenty of reasons why this other crimes evidence would come in. Counsel, can I ask you, what's the whole thing as far as due process and people versus dams in the Illinois Supreme Court? The due process argument, first of all, in the Supreme Court. I mean, is it unconstitutional, this section of the statute? No, it's absolutely constitutional. First, there's not a suspect class involved. I'm sorry, that goes to equal protection. There's a rational basis given the highly secretive, highly repetitive nature of these crimes. And the recognition that in the past, Illinois has failed these group of victims, as explicitly stated in the Illinois Domestic Violence Act, which incorporates by statutory citation. Let me ask you this. The Supreme Court did not address the equal protection argument, right? It did not, Your Honor, but it is. Let me ask you this. The appellate court addressed that. Yes, the third district did extensively address it. And it said, again, flatly, as to the suspect class. Domestic batteries are not a protected class. As to the fundamental right, it said that the abrogation of propensity evidence has never been a fundamental right to fall within the ambit of due process, that this has always been something that has been left to the legislature. And the Supreme Court, what's even more interesting about the Supreme Court's opinion, Dabbs, is that the portion that it incorporates from Donahoe in analyzing the analogous statutes is actually an equal protection analysis. Now, in Donahoe, of course, they address both the equal protection and the due process claims the defendant raised. But, again, the fact that the equal protection analysis from Donahoe, the court in Dabbs found informative, again, goes to belie defendant's equal protection claim here. So the status of the law in the state of Illinois right now, relative to this section of the statute, 7.4, I believe it is, right? Correct, Your Honor. As far as due process, is it unconstitutional under this Supreme Court in Illinois? No, it's absolutely constitutional. And as far as equal protection argument, is it unconstitutional under a ruling from the Illinois Appellate Court? No, Your Honor. And that's the status of the law, right? That is the status of the law. Thank you. Just to speak briefly further to that point, the proper application of 7.4 means that the due process is protected, as was found in Donahoe and as was found in Dabbs. Here, there is no abuse of discretion. The trial court's ruling was not fanciful. It was not unreasonable. It was not arbitrary. The court specifically enunciated each factor, the temporal proximity, the factual similarity, and all of the other relevant facts and circumstances. It went through each one. It found that all six were temporally proximate. It found that four of the six were factually similar to warrant inclusion. It then went back and evaluated all six, not just the four that were remaining, but all six, and said that, under the relevant facts and circumstances, is there corroboration such that she was willing to allow that? And she found that three of the six were included and excluded three of the six. Then the trial court went through and explicitly balanced the probative versus the unduly prejudicial effect and admitted all three. This is not only unreasonable. This is almost best practices, especially in a state where, under Abernathy, the appellate courts have found that even an implicit balancing test under 7.4 would be satisfactory. If there are no further questions for the reasons stated here and for those stated in our brief, we respectfully ask this court to affirm the trial court's finding of guilt and the defendant's sentence. Thank you. Mr. Ackerman, the bubble, please. In Dabbs, there was a pre-trial hearing before the trial court admitted the evidence, and in Dabbs, the former wife, Katie, testified, as did Amy, the complainant. In this case, that didn't happen. The last thing I'll say is concerning propensity evidence and due process. If I may, I'll cite one case that I didn't cite in my brief, Estelle v. McGuire. Went to our Supreme Court at page 484 and 5, where the Supreme Court specifically says that they have reserved the question of whether propensity evidence and the admission of that evidence violates the due process clause. I think it does in this case. Thank you. Mr. Ackerman, I have to ask this. Justice Connors may have asked you before, but the state of the law in Illinois currently, regardless of what the Supreme Court says in the case you just cited regarding reserving that question, the state of the law currently is that that evidence is permissible. Is it not? But you cited the fact that in Dabbs the level of argument was not what it is here. Mr. Dabbs did not argue that he was defiant of a fundamentally fair trial. He was. I don't know about Mr. Dabbs because he testified in his testimony which didn't resonate well with the court. Here David never said a word. That was his right. But you cannot have a fundamentally fair trial, and I appreciate what the state has said to the court, that you're not supposed to count transcript pages. If I tell you one-third of this trial was propensity, you can accept my representation. I counted the pages. And I did that because there's other first district authority or the proposition that where 50 percent of a murder trial concerned propensity evidence, there was a divided panel of this court, not this court. Reverse cited in our group. Thank you. Thank you, Mr. Atkins. Thank you, Mr. Walker. This matter will be taken under advisement.